IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| APM RESTAURANT GROUP, INC., an Illinois corporation, and JOSLIN ALFAR, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16 C 02495 |
| ASSOCIATED BANK, a Wisconsin Banking Corporation, | ) ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs APM Restaurant Group, Inc., and its owner, Joslin Alfar, allege that Associated Bank negligently cashed more than $80,000 in checks forged by a rouge APM employee, leading to the demise of the plaintiffs' restaurant business. APM and Alfar accuse Associated of breach of the Uniform Commercial Code ("UCC") and negligence, and seek compensatory damages of more than $2.4 million. Associated has moved to dismiss the suit. Because the plaintiffs have not sufficiently alleged that they have Article III standing to bring this suit, the motion is granted and the complaint is dismissed without prejudice.

## BACKGROUND

When considering a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (Rule 12(b)(6) motion); *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012) (Rule 12(b)(1) motion). The following facts are, therefore, taken as true for the purposes of deciding this motion.

Alfar is the owner of APM, and together the two plaintiffs owned a restaurant business. Compl. ¶ 1. Alfar is an Illinois citizen, and APM is an Illinois corporation that has its principal place of business in Illinois. *Id.* ¶¶ 3-4. Associated is a Wisconsin corporation that has its principal place of business in Wisconsin. *Id.* ¶ 6. During 2015, "the Plaintiff Restaurant"—the identity of which, as discussed below, is unclear—had an account with Associated, and Alfar and her general manager, Peter Sayegh, were the only individuals authorized to sign checks drawn on the account. *See id.* ¶ 7.

In January 2015, one of APM's other managers began embezzling funds from that account at Associated. *Id.* ¶ 8. On January 20 of that year, Associated cashed a fraudulent check—presumably drawn on the account at issue here, though the complaint does not specify—for $6,792.10; the check was dated January 23, 2015, and had a "clearly forged signature." *Id.* ¶ 9. On February 11, Sayegh "placed an alert on the bank account" (the complaint does not explain what this means) after he discovered a withdrawal that could not be accounted for and a bank balance discrepancy. *Id.* ¶ 10. Presumably—again—this discrepancy related to the forged check, but the complaint does not specifically say. Sayegh spoke with an Associated Bank agent named Matthew, who said that he would investigate and get back to Sayegh. *Id.* Sayegh called back two weeks later and spoke with another bank agent, who confirmed the discrepancy and said he would consult with Matthew, who was then on vacation. *Id.*

Meanwhile, the rogue restaurant manager continued to cash forged and unauthorized checks, ultimately obtaining $82,657.36 from the account at Associated. *Id.* ¶ 11. The last of the checks were cashed on April 27, 2015, when the manager presented two checks, totaling $20,000, which Associated cashed without checking with APM or Alfar and despite the February 11 alert that Sayegh had placed on the account. *Id.* Someone discovered the manager's illegal

2

conduct that afternoon (the complaint provides no details of how, or by whom, this discovery occurred), but by then it was too late: the restaurant business could no longer operate because it no longer had sufficient funds to pay for employees' salaries and vendor costs. *Id.* ¶ 12. A "higher manager" at the Bank named Ann Marie promised Alfar and APM that the bank would investigate the issue and refund their lost money. *Id.* ¶ 13. The plaintiffs allege that they relied on that promise as they continued to wait for the bank to issue the funds, rather than securing money from another source to keep their business open. *Id.* Associated apparently never refunded any of the embezzled money, however, and the plaintiffs claim that as a result, the restaurant shut down. *Id.*

The plaintiffs claim damages of $2,432,657.36, including the losses of $82,657.36 in cash from the forged checks; $800,000 in fixtures, furniture, and equipment; $50,000 in liquor inventory; $300,000 in annual income for the restaurant business; and $1,200,000 as the fair market value of the business at the time it shut down. *Id.* ¶ 15. Alfar and APM have also been targeted with litigation over the business's 20-year lease, which they say will result in additional damages. *Id.* In Count I of their complaint, APM and Alfar assert that by honoring the unauthorized checks, Associated breached the UCC §§ 3-307 and 3-306. *Id.* ¶¶ 16-21. In Count II, the plaintiffs allege that Associated is liable for negligence because it had a duty to exercise due care to ensure that the drawer intended the depositor to receive the drawer's money, and it breached that duty by failing to "confirm with or inform" Alfar and APM about the unauthorized checks it was honoring. *Id.* ¶¶ 22-26.

## ANALYSIS

Associated first argues that Alfar lacks standing to sue Associated because she does not allege that she personally had any relationship with that bank. *See* Mot. to Dismiss at 2. Standing

3

arises under the case-or-controversy requirement of Article III of the U.S. Constitution, and concerns whether Alfar "is entitled to have the court decide the merits of the dispute or particular issues." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citations and quotation marks omitted); *see also Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015). It is the plaintiff's burden to show that she meets the requirements of standing. *See Kathrein v. City of Evanston*, 636 F.3d 906, 914 (7th Cir. 2011). There are three elements to Article III standing: "(1) an 'injury in fact,' that is, 'an invasion of a legally protected interest" that is "'concrete and particularized'" as well as "'actual or imminent;' (2) a causal connection between the injury and the challenged conduct, meaning that the injury is 'fairly traceable' to the challenged conduct; and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Dunnet Bay Const. Co.*, 799 F.3d at 688 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). These three elements are the "constitutional minimum requirements for standing." *Id.*

The express premise of the Bank's standing argument is that the account in question is not Alfar's account; the implicit premise is that it is APM's account. The complaint, however, alleges neither premise. According to the complaint, Alfar and APM jointly owned a restaurant, and "the Plaintiff Restaurant" had an account at Associated. But there is no "Plaintiff Restaurant;" the plaintiffs are APM Restaurant Group, Inc., a corporation, and Alfar, an individual. They allege that they jointly owned a restaurant, but the complaint says nothing about the restaurant itself. Presumably, "the Plaintiff Restaurant" refers to the restaurant that Alfar and APM allegedly owned, but that is only a guess because the complaint does not identify any restaurant by name. Nor does it supply any information about the business form of the restaurant. Was it incorporated? Was it operating under an assumed name as a joint venture between Alfar

4

and APM? Was Alfar the owner of APM Restaurant Group, Inc., which in turn owned the restaurant? What was the nature of each plaintiff's ownership stake in the restaurant? Without some information about the relationship between the plaintiffs and the restaurant, there is no way to assess whether either of the plaintiffs has standing to sue Associated, because there is no way to assess who owned the cash on deposit with the Bank and to whom the Bank owed any duties it may have had with respect to that account.

The question of Article III standing is a jurisdictional question which the Court has an independent duty to answer. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998) (whether Article III standing exists is a "threshold jurisdictional question"); *see also Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008) ("Subject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself.") At present, the complaint fails to provide sufficient allegations to assess whether either plaintiff has standing to sue Associated Bank, because it fails to allege that either plaintiff—as opposed to "the Plaintiff Restaurant"—owned the account and relationship with Associated. Accordingly, the Court dismisses the complaint without prejudice because it fails to allege sufficient facts to establish the Court's jurisdiction over the claims asserted.

Although the Court is dismissing the complaint, it seems likely that the plaintiffs will be able to supplement the allegations of the complaint to establish the standing of some plaintiff to assert claims against Associated arising from the cashing of unauthorized checks on the account in question. Accordingly, while the Court will not, and cannot, presently address the Bank's argument that the complaint fails to state a claim, there are several points that bear consideration by the parties with respect to any amended complaint that may be filed. First, although the

Bank's motion attacks the specific legal theories identified in the complaint, this Court need not evaluate the plaintiffs' factual allegations through the lens of a particular legal theory at this stage of the litigation. APM and Alfar are not required to plead a legal theory in their complaint at all, and the Bank's efforts to identify a theory under which the plaintiffs cannot recover does not doom the suit at the outset. *See, e.g., Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *Jogi v. Voges*, 480 F.3d 822, 826 (7th Cir. 2007) ("It is established . . . that complaints need not plead legal theories."). Regardless of whether a plaintiff has pleaded facts that establish the viability of a ***particular*** legal theory, a complaint will survive if the facts alleged plausibly entitle it to legal relief under ***some*** theory, even if not one expressly identified in the complaint. *See Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery.").

The gist of the present complaint is that an employee (of someone, but of whom it is not clear) forged signatures on unauthorized checks, and that the Bank improperly cashed those checks. Sections 3-306 and 3-307 of the UCC may or may not provide a cause of action against the Bank, but they are also not the only provisions of the UCC that might provide a cause of action. Under UCC § 4-401, for example, "[a] bank may charge against the account of a customer an item that is properly payable from that account," and "[a]n item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." 810 ILL. COMP. STAT. 5/4-401(a). Official Comment 1 to § 4-401 provides in part: "An item containing a forged drawer's signature or forged indorsement is not properly payable." UCC § 4-401 cmt. 1. This provision might provide a cause of action based on allegations that the

Bank improperly cashed forged checks. A conversion theory under UCC § 3-420 might also provide a cause of action. *See* 810 ILL. COMP. STAT. 5/3-420. And while there very well may be defenses derived from the UCC or elsewhere that will ultimately bear on the Bank's liability for cashing the forged checks, is the plaintiffs are not required to plead those defenses in the complaint.

Second, the Bank makes a generalized argument that the plaintiffs failed "to provide any factual or legal basis" for seeking some $2.4 million in damages. *See* Mot. to Dismiss at 8. As to that point, this Court notes only that a "plaintiff is not required to itemize his damages claims in his complaint" unless he or she seeks so-called special damages, which APM and Alfar have not alleged here. *See LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 922 (7th Cir. 1997) (internal quotation marks omitted). That said, the plaintiffs would do well to assess realistically what damages may be attributed to Associated's conduct. The damage claim of $2.4 million is almost certainly overstated, if only because the recovery of the value of furnishings and inventory, as well as for lost income, would be duplicative of a recovery for the fair market value of the restaurant, which would be derived from the value of the assets of the business and the present value of its future stream of income. Even if the plaintiff(s) (whoever that may turn out to be) alleges facts sufficient to plausibly establish that the Bank's conduct was the legal and proximate cause of the restaurant's demise, a double recovery—for (1) the fair market value of the restaurant and (2) the value of the components of the restaurant that provide that fair market value—would not be permitted.

* * *

For the foregoing reasons, the complaint is dismissed without prejudice. The plaintiffs are granted leave to replead on or before September 29, 2017. Absent timely filing of an amended complaint, this case will be terminated.

Date: September 1, 2017

John J. Tharp, Jr.
United States District Judge